Gabrielli, J.
The novel and primary question on this appeal concerns the propriety of inquiring of the defendant police' officer upon cross-examination whether, either prior or after his arrest, he had revealed to his superiors or anyone that, as claimed by the defendant, the complaining witness was attempting to bribe him. We hold that this inquiry was proper.
The defendant stands convicted of grand larceny, first degree and attempted grand larceny, both by extortion (Penal Law, §§ 155.40, 110.00)[1] and the convictions have been affirmed (41 A D 2d 1028).
On October 21, 1969, defendant and other Narcotics Division officers, armed with a search warrant, entered the apartment of Geraldine Williams, the common-law wife of William Mathis, Jr. They threatened to send her to jail on a trumped up charge and to deprive her of her children unless she called her “ father- *358 in-law ’’, William Mathis, Sr. (Mathis), to make arrangements to have him come to the apartment immediately. Frightened, she complied and upon Mathis’ arrival, defendant demanded $6,000 from him, threatening to send Miss Williams to jail if he did not comply. Mathis left and, after a short while, returned and paid the money, whereupon defendant and his companions departed.
Thereafter, and on December 6, the defendant again sought out Mathis, this time on the pretext that he wanted to locate Mathis’ son who had been eluding him and whom he wanted to interrogate regarding a narcotics investigation. The defendant then advised Mathis that he could “ [smooth] this thing over ” for $12,000 and, of course, he would not then need to locate the son. Mathis protested that he had no money but agreed to meet with the defendant at a later date. Mathis then went to police headquarters where he related all these events to the officers in command. Following their instructions, he ■met with the defendant and agreed to pay the money in installments, the first to be made on December 11. On that date, the police gave Mathis $280 in marked bills, wired his establishment with recording devices and several officers secreted themselves on the premises. Upon defendant’s arrival, Mathis engaged him in conversation[2] culminating in defendant agreeing to accept the money in installments. When Mathis handed defendant the marked money, the officers entered the room, revealed their identity and arrested him.
The evidence presented by the prosecution was adduced from Mathis, his son, Geraldine Williams and the arresting officers, much of which was confirmed by the recorded conversations. We hold the evidence was sufficient for the jury to find both a completed larceny by extortion on October 21 and an attempted larceny on December 11; and, further, for them to refuse to *359 lend credulity to defendant’s assertions that he was being corrupted and that he agreed to accept money from him in order to later arrest him for bribery. In short, the record reveals overwhelming evidence of the defendant’s guilt.
Pursuing an attempt to impeach the defendant’s explanation, the prosecutor, by two questions and without objection, asked him whether at any time prior to going to Mathis’ restaurant to receive the bribe and arrest him, he had informed any superior officer of the alleged bribe offer made, as defendant claims, by Mathis. The defendant answered in the negative. He answered similarly when he was then asked whether he had told any of his superior officers or anyone, after his arrest, that he was attempting to get Mathis on a charge of bribery. An objection to this latter inquiry was properly overruled.
The prosecutor did not further pursue the defendant’s post-arrest silence on cross-examination. Neither did he pursue it in summation, nor did the court comment upon it when marshaling the evidence in his charge.
While it may not require articulation, we would point out that at least since People v. Rutigliano (261 N. Y. 103), the rule has been clearly defined to be that the silence of a defendant, after arrest, cannot be used against him (People v. Al-Kanani, 26 N Y 2d 473, 478; People v. Christman, 23 N Y 2d 429; People v. Robinson, 13 N Y 2d 296; People v. Allen, 300 N. Y. 222; People v. Mleczko, 298 N. Y. 153; see Richardson, Evidence, [10th ed.], § 222, p. 198). In these cases, and those cited therein, the evidence was held to be erroneously admitted on the prosecution’s direct case. Miranda v. Arizona (384 U. S. 436) confirmed the constitutional validity of this rule saying that “ it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.” (384 U. S., at p. 468, n. 37.) But, the scope of Miranda was modified by Harris v. New York (401 U. S. 222) where Chief Justice Burger, writing for the majority, stated that “ [t]he shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.” *360 Defendant, in Ms reliance on Miranda v. Arizona (supra) and its progeny, seeks to use the broad rule there laid down as a sword with which he would stifle a highly probative and proper interrogation. In contradistinction, the purpose of the rule there laid down and in People v. Rutigliano (supra) is actually to afford a shield as a guard against a direct prosecutorial attack utilizing admissions obtained when one is not under a duty to speak. In the instant case, of course, the inquiry occurred on cross-examination after the defendant had testified that in fact he was “ setting up ” Mathis preparatory to leveling a charge of bribery.
Here we are presented only with the question of whether non-utterances, or silence, may be used against the defendant on cross-examination, when such silence is patently inconsistent with the defense asserted, and there is a patent obligation to speak. We also note with interest other holdings which have approved inquiry upon cross-examination relating to a defendant’s silence, before and after his arrest, wherein somewhat similar inconsistencies were present, as bearing on his credibility (United States ex rel. Burt v. State of New Jersey, 475 F. 2d 234; Agnellino v. State of New Jersey, 493 F. 2d 714).
"z We conclude that in the posture of this case the defendant’s silence may be the proper subject of cross-examination.[3] The defendant’s testimony relating to the critical events was diametrically inconsistent with that produced by the prosecution thus creating the question of his credibility to be the central factual issue in the case. The natural consequences of his *361 status as a law enforcement officer would require Mm to promptly report any bribe or attempted bribe to Ms superiors, and certainly protest and reveal such an alleged scheme after his arrest to them, and to his fellow officers as well.
Defendant’s other contentions have been considered and have been found to be insubstantial.
The order of the Appellate Division should be affirmed.
Chief Judge Bbeitel and Judges Jasen, Jones, Wachtler and Babin concur; Judge Stevens taking no part.
Order affirmed.

. Penal Law (§ 155.40) in pertinent part provides that: “ A person is guilty of grand larceny in the first degree when he steals property and when the property, regardless of its nature and value, is obtained by extortion committed by instilling in the victim a fear that the actor or another person will ;i * * (e) use or abuse his position as a public servant by engaging in conduct within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely.”
Penal Law (§ 110.00) provides that: “ A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.”

. The recorded conversation referred to the October 21 extortion and defendant expressed no surprise when Mathis complained that “ 6,000 in two months * ** e two months ago, and now twelve “ 0 6 Where the hell ,am I going to get that kind of money.” To expedite matters, defendant inquired “ [H]ow much will you pay me? ” and after Mathis replied $300 now and $500 per week, defendant acceded. Defendant does not dispute the accuracy of the recording. He complains only that it was of poor quality and that his statements were taken out of context.

. A survey of eases in other jurisdictions reveals varying holdings. (Compare Agnellino v. State of New Jersey, 493 F. 2d 714; United States ex rel. Burt v. State of New Jersey, 475 F. 2d 234, cert. den. 414 U. S. 938 [Douglas, Brennan and Marshall, JJ., dissenting in opinion]; United States v. Ramirez, 441 F. 2d 950, cert. den. 404 U. S. 869; Martin v. United States, 400 F. 2d 149, cert. den. 393 U. S. 987, where it was held that silence after arrest is a proper subject for cross-examination; with Johnson v. Patterson, 475 F. 2d 1066, cert. den. 414 U. S. 878; Fowle v. United States, 410 F. 2d 48; cf. Deats v. Rodriguez, 477 F. 2d 1023; Gillison v. United States, 399 F. 2d 586, where it was held that silence after arrest could not be subjected to cross-examination; and with State v. Anderson, 110 Ariz. 238; cf. Jones v. State, 317 A. 2d 109 [Del.], where it was held that silence after arrest was not a proper subject for cross-examination but, that in face of overwhelming evidence of guilt, it constituted harmless error.)