OPINION OF THE COURT
Gabrielli, J.
Thomas Conyers was convicted in Supreme Court, New York County, of several crimes allegedly committed during and immediately following the armed robbery of Marion Dantzler and Grace Johnson. During his trial, Conyers testified on his own behalf that in fact there had been no robbery and gave a description of the events leading to his arrest which differed significantly from that provided by Dantzler *177 and Johnson. The prosecutor was allowed to cross-examine Conyers, over a timely defense objection, concerning his failure to inform the police of his version of the incident at the time of his arrest. Conyers’ silence was also the object of comment by the prosecutor during summation. Upon defendant’s appeal to the Appellate Division, that court concluded that Conyers was deprived of a fair trial because of the inquiry into his assertion of his right to remain silent. Accordingly, the Appellate Division reversed the judgment of conviction and ordered a new trial. The People now appeal to this court. For the reasons discussed below, we conclude that there must be an affirmance.
 At issue on this appeal is the propriety of prosecutorial use, for impeachment purposes only, of a defendant’s silence at the time of arrest. We note that it has long been and remains the law in this State that a defendant’s silence cannot be used by the People as a part of their direct case (People v Rutigliano, 261 NY 103). Thus, our inquiry today is limited to the use of a defendant’s silence for impeachment purposes when that defendant testifies at his trial. We are persuaded that a defendant’s silence at the time of his arrest may not be used against him even for impeachment purposes, since such use would violate due process and would improperly penalize a defendant for the assertion of a basic constitutional right.
The course of events which culminated in defendant’s arrest was the subject of considerable dispute at his trial. Dantzler and Grace testified that Conyers and a codefendant, Arthur Saunders, had accosted them on a New York City street and forced them at gunpoint into the hallway of a nearby apartment building, where Dantzler and Grace were robbed and bound. Dantzler managed to escape his bonds, and gave chase to Conyers and Saunders. In the course of that pursuit, one of the defendants fired a shot at Dantzler. The chase ended with the arrival of the police, who immediately arrested Conyers and Saunders. There were no other witnesses to the alleged robbery itself, although several witnesses did support parts of Dantzler’s description of the chase.
Both Saunders and Conyers testified at their joint trial.[1] *178 Their version of the incidents preceding their arrest was somewhat different from the tale told by Dantzler and Johnson. According to the defendants, they had visited Dantzler in his apartment in order to collect Conyers’ winnings on a bet placed with Dantzler the previous day. An argument developed over whether Conyers was entitled to the money, and eventually Dantzler pointed to a pouch on a table and told Conyers to take the money in the pouch. As Conyers reached for the pouch, Dantzler drew a gun, which Conyers then kicked out of his hands. Conyers and Saunders bound Dantzler and left the building with the pouch and the gun. They soon noticed Dantzler chasing them, and began to run until they were stopped by the police.
The prosecutor sought to discredit the defendants’ explanation of their encounter with Dantzler as being a recent fabrication. To this end, Conyers was cross-examined about his failure to explain the situation to the police when he was arrested. A defense objection to this line of questioning was overruled, and the prosecutor subsequently referred to Conyers’ silence during summation. Defendant contends that his assertion of the right to remain silent at the time of his arrest should not have been used against him even for impeachment purposes. We agree.
Proceeding immediately to the central legal dispute presented by this appeal, initially we recognize that in People v Rothschild (35 NY2d 355) we sustained the larceny conviction of a police officer although the People had been allowed to cross-examine the officer concerning his silence at the time of his arrest in an attempt to impeach his claim at trial that he had been engaged in a police undercover operation and had not actually been seeking to obtain money illegally. While the Rothschild case might at first glance seem to resolve the instant dispute, we note that the circumstances surrounding that case were unusual since the officer was under a duty to inform his superiors of his undercover activities, and thus his continued silence in the face of accusation by his fellow officers was extraordinarily probative. Since our decision in Rothschild, we have expressly stated that ”[t]he fact that a defendant is silent at the time of arrest may not be used to impeach him at trial” (People v Arce, 42 NY2d 179, 187). Moreover, the Supreme Court has recently concluded that the use of silence to impeach the testimony of a defendant who was given the warnings mandated by Miranda v Arizona (384 *179 US 436) is violative of due process (Doyle v Ohio, 426 US 610). Hence, we are impelled to re-examine our decision in Rothschild in light of subsequent refinements in criminal law and practice.
In Doyle v Ohio (426 US 610, supra), the Supreme Court held that where a defendant has been provided with the warnings mandated by Miranda, and thus has been impliedly promised that his silence would not be used against him, it would be fundamentally unfair to then allow that silence to in fact be used to the detriment of the accused even for the limited purpose of impeachment. In the instant case, it would appear that the police failed to provide Conyers with Miranda warnings. The People suggest that this factual distinction justifies a different result. In essence, the prosecution argues that where Miranda warnings have not been given, the accused does not receive any implied promise that his silence will not be used against him, and thus the use of that silence for impeachment purposes does not run afoul of any concept of fundamental fairness and is not violative of due process. We disagree. It would appear rather anomalous to "reward” improper police practices by allowing the existence of such impropriety to serve as the justification for admitting evidence otherwise inadmissible. Although Miranda does not mandate suppression of statements made by an accused who has not been informed of his rights if those statements have not been elicited by police interrogation, it remains good practice to inform an accused of his rights as soon as is possible. More significantly, the implied promise, contained in the Miranda warnings, that one’s silence will not be used against one, is derived not from the words of the Miranda warnings, but from the actual constitutional guarantees which they express. Thus, regardless whether that promise is repeated by the police in the form of Miranda warnings, each and every citizen has already been made just such a promise by the State. That promise is contained in the privilege against self incrimination provided by both the Federal and State Constitutions (US Const, 5th Amdt; NY Const, art I, § 6). The State has promised each of its citizens, by ratification of those constitutional provisions, that he may remain silent in the face of accusation. Having made that promise, the State may not, consistent with any concept of fundamental fairness and due process, subsequently renege on that promise by utilizing a defendant’s silence against him. The implied promise made to a suspect *180 when he is given Miranda warnings merely repeats and reiterates the promise already made by both our Constitutions. Although it is necessary to repeat that promise in order to ensure that the suspect fully understands his constitutional rights, the failure of the police to do so does not serve to prevent a suspect from relying upon that promise. Moreover, it is a matter of common knowledge that a person who is arrested is not required to speak to the police, and that his silence may not be used against him. This is not an arcane legal principle known only to the learned, but rather is familiar to most citizens. For purposes of a due process analysis based on the unfairness of capitalizing upon the accused’s accurate appreciation and exercise of his basic constitutional rights, we deem it irrelevant whether that knowledge was imparted by the police, as is required by law, or was absorbed from our common culture (see, also, Douglas v Cupp, 578 F2d 266, cert den 439 US 1081). In short, we conclude that the use for impeachment purposes of an accused’s silence at the time of his arrest is violative of due process.
There exists, moreover, another reason for precluding use of a defendant’s silence for impeachment purposes. It is basic to our system of criminal justice that an accused may not be compelled to incriminate himself (US Const, 5th Amdt; NY Const, art I, § 6). While proper application of this principle may vary with the context in which it is sought to be utilized, there can be no doubt but that at the most basic level it provides an accused with the right to remain silent in the face of interrogation or accusation. Any attempt to penalize a person for the exercise of this fundamental right must be scrutinized with extreme care. It is for this reason that in New York it has long been the law that evidence of silence at the time of an arrest may not be used as a part of the prosecution’s direct case. As we declared in People v Rutigliano (261 NY 103, 107, supra), "No cautious person, when in custody, accused of crime would care to enter into a discussion of his guilt or innocence with his captors and co-defendants, when what he said might be used against him * * * He is then under no duty to speak and his silence should not be counted as giving assent to what he hears. If he had counsel, he would doubtless be advised not to talk. If he had not, he should not be prejudiced thereby”.
Similarly, in Griffin v California (380 US 609) the Supreme Court forbade comment during trial about a defendant’s deci *181 sion to exercise his privilege against self incrimination by not taking the stand on his own behalf. The court found such commentary, to be objectionable because ”[i]t is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly” (380 US, at p 614).
These cases, of course, do not resolve the controversy concerning use of a defendant’s silence at the time of arrest to impeach his credibility, for in both Griffin and Rutigliano the defendant’s decision to exercise his privilege was sought to be used as a part of the direct prosecution case, not merely for impeachment purposes. The State’s interest in preventing perjury is a great one, and the use of a defendant’s silence for impeachment purposes imposes less of a toll upon the exercise of the privilege than does the use of that silence as proof of guilt. Thus, a distinction may validly be made between such cases. The considerations underlying both Rutigliano and Griffin, however, remain applicable, although to a different extent, when an attempt is made to utilize a defendant’s silence for purposes of impeachment.
Thus, absent unusual circumstances such as those presented in the Rothschild case, we cannot countenance the use of silence even for impeachment purposes.[2] In the typical case, the probative value of such evidence will be minimal (see United States v Hale, 422 US 171, 176-177), and yet its prejudicial effect may be considerable. Although, as noted above, the State does have an interest in preventing perjury so strong that it may at times outweigh the somewhat attenuated interests of a defendant in preventing the use of his silence for impeachment purposes, this can be so only if the facts of the particular case are such that the defendant’s silence has an unusually high probative value. In most cases, such as this one, silence when arrested is essentially ambiguous. The innocent suspect, as well as the guilty, is free to refrain from discussing the intricacies of his case with an arresting officer. Contrary to the opinion expressed by the dissent, we find no necessary contradiction between innocence and the decision to await a somewhat calmer moment and a more sympathetic audience before speaking. A suspect may well believe that it would be useless to attempt to justify his *182 apparently criminal behavior to the arresting officer. For example, in the instant case, defendant was stopped with gun in hand following a running street battle. The likelihood that any explanation for his behavior could have then prevented an arrest was minimal at best. Hence, to speak may well have appeared futile to defendant. Moreover, it is an unfortunate truth that many people in our society, especially those involved in the life of the street, view the police as antagonists rather than protectors and react to police contact with extreme suspicion, distrust, and lack of cooperation. Such people will often believe, rightly or wrongly, that nothing they might say to the police on their own behalf would be accepted. Conversely, one who has had little or no dealings with the police might wéll be too shaken by the encounter to immediately raise a valid explanation, especially when the surrounding circumstances create the strong appearance of guilt. In short, the possible explanations for silence are many and varied, and a failure to speak, absent unusual circumstances, is as consistent with innocence as guilt. Because of the low probative value which may reasonably be attached to silence, the State’s interest in utilizing that evidence for impeachment purposes is correspondingly weakened and will not justify the imposition of even so attenuated a penalty on the exercise of a defendant’s right to remain silent (see Comment, Impeaching a Defendant’s Trial Testimony by Proof of Post-Arrest Silence, 123 U of Pa L Rev 940, 974).
 It is, of course, true that statements made by a defendant who has not been given Miranda warnings at the time of arrest may nonetheless be used by the prosecution for impeachment purposes should the defendant take the stand on his own behalf (see Harris v New York, 401 US 222). While this rule implies the validity for constitutional purposes of distinguishing between the use of evidence as a part of the prosecution’s direct case and the use of evidence for impeachment purposes only, it is certainly not contrary to the principle we enunciate today. This is so for several reasons. First, an inconsistent statement is much more probative than is silence. Moreover, a defendant’s decision to remain silent at the time of arrest is in and of itself an assertion of a basic constitutional privilege. Thus, to allow that silence to be used against a defendant is to place a burden upon the direct exercise of a fundamental right. The Miranda warnings, on the other hand, constitute a prophylactic device designed to *183 prevent constitutional violations and to protect the rights of an accused. In the absence of any actual coercion, a statement made by a defendant who has not been informed of his rights is not inherently suspect, nor does the use of such a statement against a defendant penalize that defendant for the exercise of a constitutionally protected right. Since the use for impeachment purposes of a statement made in the absence of Miranda warnings does not penalize an accused for the assertion of a constitutional right, whereas the use of a defendant’s silence even for impeachment purposes only would burden the exercise of the defendant’s privilege against self incrimination, it is appropriate to allow the use of such statements for impeachment purposes while precluding similar use of a defendant’s silence.
In short, unless the introduction of evidence pertaining to a defendant’s silence for impeachment purposes would materially advance the search for truth, it cannot be deemed to serve a sufficiently substantial State interest to justify the imposition of a penalty for the exercise of a constitutional right. In the typical case, as here, silence at the time of arrest will simply be too ambiguous to provide such a basis (see United States v Hale, 422 US 171, supra; cf. Raffel v United States, 271 US 494). Hence, we conclude that the use of defendant’s silence for impeachment constituted an impermissible penalty for the exercise of his privilege.
Finally, we must reject the People’s argument that the use of defendant’s silence for impeachment purposes constituted harmless error at worst. Although there existed other evidence which might sustain a finding of guilt by the jury, it is evident that the nature and extent of the encounter between the defendants and their alleged victims was basic to the determination of guilt or innocence. The jury was presented with a pointed issue of credibility and was required to believe either the defendants or the prosecution witnesses. In this context, any evidence tending to impeach Conyers’ credibility was extremely significant and may well have had a considerable influence upon the jury. Hence, even were we to find harmless error analysis to be appropriate in a case of this nature, in the absence of curative instructions we must conclude that in this case there is a reasonable possibility that this constitutional error contributed to defendant’s conviction (see People v Crimmins, 36 NY2d 230, 240-241).
*184 Accordingly, the order directing a new trial should be affirmed.

. Saunders was also convicted, but his conviction was affirmed by the Appellate Division and leave to appeal to this court was denied (People v Saunders, 63 AD2d 868, mot for lv to app den 44 NY2d 956). We note that the issues presented on this appeal were not raised by Saunders on his appeal.

. It should be emphasized that this is an alternative basis for our decision in this case, since the due process considerations discussed previously would in all cases prevent the use of silence for impeachment purposes.