■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK SIMON, Appellant.—Judgment, Supreme Court, New York County, entered April 15, 1977, convicting defendant, after jury trial, of manslaughter in the first degree (Penal Law, § 125.20), and sentencing him thereon to an indeterminate term of imprisonment not to exceed nine years, is affirmed. The facts are quite fully set forth in the dissenting memorandum. It is undisputed that the shooting and killing of the victim had its genesis in a quarrel between the victim and the defendant, so that as the defendant said, "I felt it was all my fault." There was sufficient evidence that defendant had done the shooting. Defendant, however, contended that the shooting had been done by a friend of his, Donny Wilkens, who unfortunately was himself killed an hour later. (The defense that the crime was committed by someone else who is unfortunately dead has traditionally been met with skepticism.) The dissenter thinks that we should reverse the judgment because of essentially one question asked of defendant by the prosecution, as to whether the defendant had said anything to the police about his defense. It is established that the prosecution may not bring out the fact of defendant's silence at the time of the arrest or immediately before it, neither as part of the prosecution's case, nor on impeachment of defendant if defendant chooses to testify. *(People v Conyers,* 49 NY2d 174.) But in the present case, the fact of defendant's silence at the time of arrest had already been brought out by defendant's attorney upon cross-examination of the police officer. Thus during the prosecution's case, on cross-examination of the police officer by the defendant's attorney, immediately following the testimony as to defendant's surrender and arrest, the following took place: "Q. And this defendant did not at any time make any statements to you concerning this case; is that right? A. Well, I endeavored to ask him about it

but you advised him not to speak to me, sir. Q. And at what point did you endeavor to ask him anything?" There was then a side-bar conference with the court in which the following was said: "THE COURT: In the first place you should not have brought the subject up. The fact that he didn't make any damaging statement is not really—MR. MANDEL: [defendant's attorney] No statement. THE COURT:—is not really admissible and now you opened—you have the witness solicit a statement which is not flattering to your client. I think you better leave the whole thing alone. Now, what are you going to try to do? What are you going to try to get out of him now? MR. MANDEL: I wanted to find out if he made any statements." Thus the jury knew as a result of defendant's attorney's question that at the time of the arrest defendant said nothing. Further, even this self-inflicted damage to defendant was neutralized by the following evidence brought out explicitly on redirect of the defendant's testimony by his attorney, i.e., that during the period when the defendant knew the police were looking for him, on September 11, 1976, three days after the shooting and a couple of days before defendant surrendered, defendant's attorney, in defendant's presence and hearing, called the police officer and told the police officer, "that he was seeking to arrest the wrong man * * * and that one Donny Wilkens had committed the murder." This statement was earlier hinted at by defendant's attorney during the prosecution's case when, on cross-examination of the police officer, defendant's attorney asked whether in the telephone conversation of September 11 between defendant's attorney and the arresting officer they had discussed various matters other than the surrender of the defendant— "a conversation about the case." In the circumstances, we think defendant was not prejudiced by the fact that, under questioning by the District Attorney, defendant said the same thing about his silence as had been previously brought out by his attorney from the arresting officer. Concur—Kupferman, J. P., Birns, Silverman and Ross, JJ.

Lynch, J., dissents in a memorandum as follows: The trial of this indictment for murder, second degree, necessarily put into contest the credibility of the prosecution's witnesses against that of the defendant and his witnesses. The defendant's credibility was unfairly impeached by testimony elicited from him on cross-examination that he had remained silent when arrested and had not told the exculpatory story that he related at the trial. For this reason I would reverse and remand the matter for a new trial. No prosecution witness was able to testify that he saw the defendant shoot the victim, Charlie Houston. One Hicks testified that about 7:15 in the evening, while coaching a basketball game in Morningside Park, he heard two or three loud noises that sounded like firecrackers or shots. He saw two men running toward a hole in the surrounding fence, one carrying a gun, the other zigzagging until he bumped against the fence next to the hole. The armed man fired two shots at the other and then walked away into the park. Ben Houston testified that that afternoon the defendant and his brother Charlie had had an argument about a bicycle and that the defendant had told him he had better "straighten out his brother". He stated that he met the defendant leaving the park that evening and the defendant said, "I shot your brother but not to kill him". Houston told this to a detective at the scene who immediately commenced a search for the defendant. Debra Parker testified that that afternoon the defendant had told her about his argument with Charlie Houston and that he had "almost put [him] to sleep and if he had do [sic] it once he would do it again". Parker testified that the defendant also said he had a loaded gun which he had intended to throw away, but which he now intended to use on Charlie Houston. The detective

who had searched for the defendant testified that the defendant, accompanied by his lawyer, had surrendered himself. Upon cross-examination he stated that he had tried to question the defendant but "You [defense counsel] advised him not to speak to me". The defendant produced Joshua Sullivan, who claimed to have witnessed the shooting and whose description of the assailant varied from the description given by the prosecution's witness, Hicks. The defendant also produced a witness, Rivers, who testified that he went to the park that evening with the defendant and one Wilkens. The three of them met Charlie Houston and angry words were exchanged, but they walked away and watched a basketball game. Rivers stated that he then heard five or six shots and, after ducking, looked up to see Wilkens putting a pistol into his pocket. He and the defendant ran from the park. The next morning Rivers learned that Wilkens had been murdered shortly after the shooting. The defendant himself testified. He admitted the afternoon argument with Charlie Houston about the bicycle. He denied carrying a gun and the conversation with Debra Parker. He told of going to the park that evening with Rivers, Wilkens and another. He stated that he told Wilkens of his argument with Charlie Houston and Wilkens told him not to worry about Houston. While they were watching a basketball game, Houston came up to him and said, "I see you brought your boys with you". Wilkens responded and began an argument with Houston that ended when Wilkens pulled out a pistol and shot him. The defendant testified that he then saw Houston crouching and running toward a hole in the fence. Rivers then grabbed the defendant and they ran from the park. He later learned that the police were looking for him and three days later he was arrested when, accompanied by his attorney, he turned himself in. The defendant, who was "free to refrain from discussing * * * his case with an arresting officer" (People v Conyers, 49 NY2d 174, 181), and did so refrain according to the testimony of the arresting officer, was asked the following on cross-examination: "Q. Did you ever tell us what you told us today . . withdrawn, Did you ever [sic] this to any police officers before you appeared here today? Defense Counsel: Objection, your Honor. The Court: Overruled. A. Well, the lawyer told me, that I should go there to the police station when I was surrendering. The Court: The question is, did you ever [sic] this, first of all, what do you mean by this? Q. Did you ever tell a police officer that Donny Wilkens and not you had, in fact, done the shooting? A. I never told them nothing about the shooting. Just name, rank and serial number." From all of the testimony in the case that the jury had heard up to this point, it had to know that the first time the defendant talked to the police after the shooting was when he was arrested. The defendant's responses indicate that he thought the questions referred to what he told the police when he turned himself in. Indeed, there is no reason from the questions themselves to think otherwise. It is, however, reversible error to use a defendant's postarrest silence for impeachment purposes in a case hinging upon an assessment of the defendant's credibility (People v Conyers, 65 AD2d 437, affd 49 NY2d 174). Upon appeal the prosecution argues that the questions asked on cross-examination were not error because they referred to the defendant's prearrest conduct. To support this contention it points to the defendant's testimony on redirect that, prior to turning himself in, he was in his attorney's office when the latter called the police to tell them that they were looking for the wrong man, that Donny Wilkens was the killer. The prosecution argues that it was to this conduct that its questions on cross-examination were directed. This contention is belied by the first question asked, which sought any defendant's statement to the police up to the day he was

testifying. Furthermore the questions must have been understood by the jury to have related to the time of the defendant's arrest because, at the time they were asked, it knew of no prior communication. Finally, this conclusion of the jury would not have been dispelled by the defendant's testimony on redirect because that pertained to what the defendant's attorney had told the police, not to what the defendant himself had or had not told them.