Gabrielli, J.
(dissenting). Pursuant to well-established legal precedent, I am compelled to dissent and vote to reverse the order of the Appellate Division. Simply stated, the People were improperly permitted, over a timely objection, to question defendant about his failure to provide the police at the time of his arrest with every detail of the explanation for his conduct that he subsequently asserted at trial. Since there existed no actual inconsistency between what defendant told the police following his arrest and his testimony at trial, cross-examination concerning defendant’s partial silence at the time of his arrest is violative of due process (People v Conyers, 49 NY2d 174; Doyle v Ohio, 426 US 610; cf. People v Dawson, 50 NY2d 311).
In the early morning hours of January 4, 1977, defendant shot one Robert Johnson in the abdomen during an altercation with Johnson on the sidewalk outside the Central Bar at East 161st Street and Morris Avenue in The Bronx. Fortunately, the injury was not fatal. Savage was arrested for the crime several weeks later, and after being given the warnings mandated by Miranda v Arizona (384 US 436), defendant told police that he was glad he had been arrested, because he was "tired”. He also admitted that he had shot Johnson outside the Central Bar, but he otherwise gave no details about the incident at that time, according to the trial testimony of the officer to whom those statements were made. At defendant’s trial, Johnson and several other witnesses testified that defendant had drawn his gun and purposely shot Johnson during an argument. Defendant testified on his own behalf. He admitted shooting Johnson, but sought to justify his action, asserting that Johnson had assaulted him and was attempting to rob him. Defendant claimed that he drew the gun in the hope of frightening off Johnson and without any intention of actually using it, but that the gun accidentally discharged in the scuffle.
On cross-examination, the court permitted the prosecutor to ask defendant the following question over a timely defense objection: "Now, when you saw Detective Creegan [following the arrest], before you saw your lawyer, when you saw the police officer, did you tell the police officer that he [Johnson] attempted to rob you?” Since the officer had already testified on direct that defendant had simply admitted shooting John *684 son and had not made any other statements following his arrest, this question was obviously intended to impeach defendant’s exculpatory testimony at trial by suggesting that it was a recent fabrication. Interestingly, however, defendant responded that he had in fact told the officer his version of the incident. The prosecutor was then permitted to cross-examine defendant at some length about the discrepancy thus revealed between the testimony of the officer and that of defendant concerning the statements defendant had made to the officer. For reasons that follow I am constrained to conclude that it was error to allow the People to question defendant about his failure to tell the police his version of the facts following his arrest. Hence, there should be a reversal and a new trial.
It has long been the law in this State that a defendant’s silence following his arrest may not be used against him as evidence of guilt (People v Rutigliano, 261 NY 103). Although at one time it was permissible to use the defendant’s silence as a means of impeaching his in-court testimony on the ground that it was a recent fabrication (see People v Rothschild, 35 NY2d 355), that exception to the general prohibition against the use of a defendant’s silence was sharply curtailed by the Supreme Court in Doyle v Ohio (426 US 610, supra). It was held in Doyle that a defendant who remains silent after being given his Miranda warnings may not subsequently be questioned, even for the limited purpose of impeachment, concerning that silence. Thereafter, in People v Conyers (49 NY2d 174, 180, supra) we recognized that under both the Federal and New York State Constitutions, "the use for impeachment purposes of an accused’s silence at the time of his arrest is violative of due process”.[1] I consider this principle, which a fortiori is applicable to the assertion of the right to silence following an arrest (see Doyle v Ohio, 426 US 610, supra; see, also, People v Conrow, 200 NY 356, 367-369), to be dispositive of the instant appeal. Quite simply, the question *685 quoted above constituted an attempt to use defendant’s postarrest silence to impeach his trial testimony by suggesting that his failure to tell the police his version of events following his arrest implied that it was a recent fabrication. As such, it falls within the bar against such cross-examination enunciated in Doyle and in Conyers.
The majority conclude that the instant case is distinguishable from Doyle and Conyers because the defendants in those cases said little or nothing to the police at the time of arrest, whereas Savage did admit that he had shot Johnson. I do not find this factual distinction to be constitutionally significant in this context. The majority impliedly suggest that a defendant who once waives his right to remain silent by speaking to the police must then either continue to speak or subject himself to cross-examination concerning his subsequent silence. I am unable to agree with that and cannot concur in the majority’s decision to so neatly separate the initial assertion of the right to remain silent from any subsequent exercise of that right. A defendant who does begin to speak to the police has the absolute right to cease speaking at any time and thereby impliedly reassert his right to be silent, and no compulsion, however subtle, may be employed to persuade such a defendant to continue speaking. One who makes an admission to the police does not thereby assume any obligation to volunteer further information, and the failure to do so may not serve as a basis for discrediting a subsequent explanation. This is so because the decision to refrain from giving complete details to the police, like the decision not to speak to the police at all, must be deemed an assertion of the defendant’s right to remain silent. Since the State has impliedly promised every defendant that it will not use his silence against him, it would be fundamentally unfair to nonetheless allow the assertion of that right to be used even for impeachment purposes only (see People v Conyers, supra).
Clearly distinguishable are those cases in which a defendant at or following his arrest actually makes a statement which is inconsistent with his later testimony at trial.[2] In such a *686 situation, the prosecution is free to use that inconsistency for impeachment purposes, even if the statement would be inadmissible on the prosecution’s direct case because it was obtained without first providing the suspect with the mandatory Miranda warnings (People v Wise, 46 NY2d 321; People v Harris, 25 NY2d 175, affd 401 US 222). There exist several reasons why a testifying defendant may be impeached by inconsistent statements obtained in violation of Miranda but not by his assertion of his right to refrain from speaking to his accusers. First, while the State promises a defendant that it will not use his silence against him and may not subsequently renege on that assurance, no similar promise is made with respect to a defendant’s voluntary statements, even if obtained in violation of Miranda. Hence, there exists no fundamental unfairness in allowing the latter to be used for impeachment purposes. Moreover, a direct inconsistency is of much greater probative value than is a defendant’s complete or partial silence. Furthermore, "a defendant’s decision to remain silent at the time of arrest is in and of itself an assertion of a basic constitutional privilege. Thus, to allow that silence to be used against a defendant is to place a burden upon the direct exercise of a fundamental right. The Miranda warnings, on the other hand, constitute a prophylactic device designed to prevent constitutional violations and to protect the rights of an accused. In the absence of any actual coercion, a statement made by a defendant who has not been informed of his rights is not inherently suspect, nor does the use of such a statement against a defendant penalize that defendant for the exercise of a constitutionally protected right” (People v Conyers, 49 NY2d 174, 182-183, supra). In sum, whenever the alleged inconsistency arises not from the defendant’s words, but from his failure to speak fully at a time when he was privileged to refrain from speaking at all, the prosecution may not use that claimed inconsistency to impeach the defendant’s trial testimony.
This is not to suggest that a defendant may never be cross-examined as to his failure to speak. Certainly, if the defendant himself puts the matter in issue, the trial court would not *687 abuse its discretion by allowing the People to pursue the subject. For example, if a defendant on direct examination, or even in response to a legitimate prosecution query during cross-examination, were to testify that he told his exculpatory version of the facts to the police, the prohibition against the use of defendant’s silence would not apply. In such a case, the trial court would be empowered not only to allow cross-examination of the defendant on this point (see Doyle v Ohio, 426 US 610, 619-620, n 11, supra), but also to permit the People to provide direct evidence to the contrary in rebuttal (see, also, People v Wise, 46 NY2d 321, 328, supra). This is so because a defendant who is allowed, whether properly or not, to buttress his exculpatory trial testimony in such a way (see Richardson, Evidence [10th ed], § 519) creates an issue concerning the exact extent of his statements to the police and thereby opens the door to an inquiry which would otherwise be forbidden. In short, if a defendant seeks to rely on a claim that he made certain statements to the authorities, the prosecution normally should be free both to attempt to disprove the existence of those statements and to explore the circumstances surrounding their purported utterance.
No such exception to the general bar against use of a defendant’s silence is applicable to the instant case, for here the entire issue arose as a result of an improper prosecution attempt to use defendant’s postarrest silence to discredit his exculpatory trial testimony. It is true that defendant did eventually testify that he had told the officers his exculpatory story. Hence, in accord with the principle discussed above, had such a statement been made either on direct or in response to permissible cross-examination, the People legitimately could have sought to pursue the matter. As it is, however, this statement was elicited by the prosecution in the course of a wholly improper inquiry and accordingly cannot serve to justify that examination nunc pro tunc. The legitimacy of a particular line of cross-examination must be judged prospectively, not retroactively, in the sense that testimony obtained during a particular line of questioning may not be used as an ex post facto justification for that very line of inquiry if it was clearly improper at the time it was commenced. Thus, in the instant case, the fact that the prosecution’s improper cross-examination ultimately elicited testimony which could itself have served as a basis for legitimate cross-examination had it been made in a different context, does not negate the undeni *688 able fact that the trial court erred, in allowing that initial inquiry (cf. United States v Mavrick, 601 F2d 921).
Nor do I find any merit in the People’s additional contention that the error in allowing the prosecution to cross-examine Savage about his silence was harmless. Although there was considerable evidence of guilt, there nonetheless remained a question of credibility for the jury as to the conflicting testimony concerning the details of the dispute between defendant and Johnson. In such a case, the assault upon defendant’s credibility may well have played a significant part in the jury’s ultimate determination that defendant was guilty. Especially is this true in light of the prosecutor’s summation, which emphasized defendant’s failure to tell the police his version of the facts following his arrest. Thus, I must conclude that there does exist a reasonable possibility that this constitutional error contributed to defendant’s conviction (see People v Crimmins, 36 NY2d 230).
In light of my conclusion that defendant is entitled to a new trial on this ground, I deem it unnecessary to consider any of defendant’s other contentions.
Accordingly, I vote to reverse the order appealed from and to remit the case to Supreme Court, Bronx County, for a new trial.
Judges Jasen, Jones and Meyer concur with Judge Fuchsberg; Chief Judge Cooke concurs in a separate opinion; Judge Gabrielli, dissents and votes to reverse in another opinion in which Judge Wachtler concurs.
Order affirmed.

. We also held in Conyers that use of silence, even for impeachment purposes only, was improper under both the Federal and State Constitutions regardless of whether the defendant has actually been given his Miranda warnings. Recently, the Supreme Court in Jenkins v Anderson (447 US 231) has indicated that if the defendant is not given Miranda warnings and does not otherwise specifically indicate that he is relying upon his right to remain silent, the use of that silence for impeachment purposes is not violative of the Federal Constitution. This holding, however, does not vitiate the conclusion we reached in Conyers that such cross-examination is violative of our State Constitution. In any event, since Savage was given Miranda warnings, Jenkins is not relevant to this appeal.

. The People also suggest that the instant case does present an actual inconsistency in that the defendant told the officer following his arrest that he had shot Johnson during a "dispute”, whereas at trial defendant testified that he had shot Johnson during an attempted assault and robbery. I find this particular argument unpersuasive, for two reasons. First, there does not appear to be any necessary contradiction between the two accounts. That the "dispute” between defendant and *686 Johnson was caused by a robbery attempt does not make it any less of a "dispute”. Moreover, the police officer did not specifically testify that the defendant actually used the word "dispute” to describe the incident; rather, that term was supplied by the prosecutor (cf. Anderson v Charles, 447 US —, 48 USLW 3819).