■ In the Matter of CHARLES B., Appellant. — In a juvenile delinquency proceeding, the appeal is from an order of the Family Court, Kings County (Esquirol, J.), dated August 1, 1979, which, upon a finding that appellant had commited an act which, if committed by an adult, would constitute the crime of robbery in the first degree, adjudicated him a juvenile delinquent and placed him with the Division For Youth, Title II. Order reversed, on the law, without costs or disbursements, and delinquency petition dismissed. Appellant's guilt was not proved beyond a reasonable doubt. He was arrested by a police officer approximately 100 feet away from where a robbery had taken place five minutes before. At trial, the victim identified appellant solely upon the basis of his having worn the "same" blue jacket and maroon pants as the robber. The complainant admitted that he did not see the face of the person who wielded a

tree branch and relieved him of his money, because the robber wore a hood. Under these circumstances, and where the commission of the crime and the subsequent arrest of the appellant were not contemporaneous, guilt was not adequately established. Mangano, J. P., Rabin and O'Connor, JJ., concur.

Gibbons, J., concurs insofar as the majority has reversed the order, but otherwise dissents and votes to remit the proceeding to the Family Court for a new hearing, with the following memorandum: Although I share the view of Justice Gulotta that testimony of any peculiar or distinguishing characteristics such as similarity of general appearance, size, voice, features and coloration of clothing by a witness, who observed the alleged offender in close proximity to the scene of the crime and shortly thereafter, may provide competent evidence of identification for evaluation by the fact finder *(People v Spinks,* 37 AD2d 424), I am, however, of the opinion that a reversal is warranted for the reason that the prosecution improperly introduced into the case evidence of appellant's failure to respond to police questioning at the time of his arrest. This error constituted an impermissible intrusion upon appellant's constitutional right against self incrimination and deprived him of a fair trial. The obvious purpose of informing the court that the appellant remained silent when questioned by the police officer in the hallway into which he had run was to create an inference of guilt. This evidence was in total disregard of the appellant's constitutional right against self incrimination. In *People v Von Werne* (41 NY2d 584, 588), the court held: "True, this defendant was not under formal arrest when interrogated in his own residence by the police officer. Yet the absence of a formal arrest is not dispositive here. A defendant in a criminal case has the right, granted by both the Federal and State Constitutions, to refuse to incriminate himself. (US Const, 5th, 14th Amdts; NY Const, art I, § 6.) The point of the cases is that a defendant's exercise of his constitutional right may not be used against him by the prosecution. *(Griffin v California,* 380 US 609, 615.) The only apparent purpose of informing the jury that the defendant had elected to remain silent during police interrogation is to permit them to infer consciousness of guilt. The use of such proof for this, its only purpose, is not permissible. *(People v Al-Kanani* [26 NY2d 473], *supra.)*" In *People v Conyers* (49 NY2d 174, 182), the court held, in the same vein: "a defendant's decision to remain silent at the time of arrest is in and of itself an assertion of a basic constitutional privilege. Thus, to allow that silence to be used against a defendant is to place a burden upon the direct exercise of a *fundamental right.*" (Emphasis added.) This court, in *People v Gilmore* (76 AD2d 548, 550), in defining the three distinct intervals following the commission of a crime as the same pertain to the appellant's privilege under each to assert his right to remain silent under the Fifth Amendment of the Constitution of the United States, held as follows: "The differing legal consequences flowing from such silence require a consideration of three distinct intervals: (1) the prearrest period, meaning that period of time after a crime has been committed but before the police have made any affirmative contact with the defendant; (2) the postarrest period, referring to that time after *Miranda* warnings have been given (see *Miranda v Arizona,* 384 US 436); and (3) *the 'time of arrest', which refers to the amorphous block of time after affirmative contact has been made between police and suspect, but prior to the communication of constructional rights.*" (Emphasis added.) At the time when the police officer confronted the appellant in the hallway and questioned him, such "affirmative contact ha[d] been made between [the] police and [the] suspect" herein as to designate that encounter as the "time of arrest" within the meaning of *People v Conyers (supra).* The prosecution's impermissible eliciting of evidence of appellant's silence, under the circumstances of this case, although not objected to at the trial, represents an error of constitutional

proportions involving a fundamental right. Although the police officer's inquiry was both necessary and proper in the course of investigating the robbery, it was, nevertheless, neither relevant nor in issue at the trial, and any reference to appellant's refusal to respond slanted the fact-finding process against him by impermissibly suggesting a consciousness of guilt, thereby depriving him of a fair trial. In the light of the prejudicial effect of this information, coupled with the less than overwhelming proof of identification, it cannot be said that there was no reasonable possibility that this error did not contribute to the finding of guilt (see *People v Crimmins,* 36 NY2d 230). Consonant with the holding in *Ivan v City of New York* (407 US 203), it is now the established law in this State, "that fairness requires that no distinction be made between adults and juveniles in evidentiary matters." *(Matter of Robert P.,* 40 AD2d 638, 639.) *Matter of Winship* (397 US 358) guaranteed to a juvenile the same constitutional safeguards of right to counsel, right of confrontation, privilege against self incrimination, and the standard of proof of guilt beyond a reasonable doubt as are afforded an adult. The same concerns are embraced within the statutory format of this State. Subdivision (a) of section 744 of the Family Court Act mandates, *inter alia,* that "[O]nly evidence that is competent, material and relevant may be admitted in a fact-finding hearing." Subdivision (a) of section 741 of the Family Court Act directs the court to advise the accused juvenile of his "right to remain silent", and where this obligation was not fulfilled by the court, the order was reversed and the matter was remanded for a new fact-finding hearing in *Matter of Troy L.* (53 AD2d 615). Here, Police Officer Toby's testimony concerning appellant's silence at the time of his arrest was not made any less prejudicial because it may have been offered gratuitously, nor was it thereby a lesser intrusion upon the appellant's constitutional right against self incrimination so as to diminish the improper inferences suggested thereby to the fact finder, in violation of the rule expressed in *People v Von Werne (supra)* and *People v Conyers (supra)* because the appellant was a minor. To now hold, as does my learned colleague who would affirm the order, that because this proceeding was conducted by a Family Court Judge sitting without a jury, that the possibility that such prejudicial evidence would have a persuasive effect on the fact-finding process was eliminated for that reason, and was but harmless error, would be to ignore the appellant's constitutional rights, and to indulge in an assumption for which there can be found no basis in the record that such illegal evidence had no impact on the fact-finding process and was completely disregarded and treated as though it did not exist. A trial before a court without a jury in the Family Court does not provide a license to dilute the rules of evidence or the juvenile appellant's constitutional rights. The order should, therefore, be reversed in the interest of justice and the matter remitted for a new hearing.

Gulotta, J., dissents and votes to affirm the order, with the following memorandum: My fellow Justices alternately specify two deficiencies in the proceedings before the Family Court which, they conclude, warrant a reversal in the instant case: (1) the insufficiency of the evidence identifying appellant as one of the perpetrators of the underlying criminal acts; and (2) the receipt into evidence of testimony by the arresting officer regarding appellant's decision to remain silent at the time of his apprehension. Under the facts of the instant case, I do not believe that either claim is tenable and, therefore, respectfully vote to affirm. The issues were tried before a Judge, without a jury. The testimony reveals that upon leaving a Chinese restaurant at or about 10:25 P.M. on December 19, 1978, the 14-year-old complainant was followed by two youths who had formerly been standing at a bus stop, and that part way up the street one of these two individuals stepped in front of the complainant and pulled out a knife. The second individual, who was later identified as the

appellant, was standing next to the complainant at this juncture, and was armed with a large stick. The complainant ran into the well-lit lobby of a nearby building, where he was cornered by the two individuals and robbed at knifepoint. The "booty" amounts to two egg rolls and some 40¢. At this moment, a police cruiser happened to drive by, whereupon the perpetrators turned and fled. As soon as the robbers had left the lobby, the complainant ran out of the building, flagged down the patrol car and informed the officers that he had just been robbed. The complainant then got into the patrol car with the two officers and they circled the block. At this point, one of the police officers (Officer Toby) observed a youth in a blue ski jacket run across the street and into the lobby of 10 Amboy Street, whereupon he stopped the vehicle in order to give chase. The youth (appellant) was apprehended on the second floor landing "walking from one exit to another" and, when questioned about his presence in the building, made no reply. He was then brought downtairs, where he was identified by the complainant "[b]ecause he had on the same clothes" as one of his assailants, i.e., a blue down jacket and maroon pants. (According to the complainant, the face of the robber who had been so attired was obscured by the hood of his jacket.) The identification was made within minutes of the actual robbery, and at a place located within 100 feet of the lobby in which it had occurred. With respect to the issue of identification, I believe that the proof adduced at the trial tending to show that the complainant had been robbed at knifepoint by two perpetrators, one of whom was wearing a blue down jacket and maroon pants and whose facial features had been obscured by a hood, constituted sufficient competent evidence when coupled with the further testimony identifying appellant on the basis of his apparel, to permit the fact finder to reasonably conclude that the individual so identified was one of the actual offenders. The distinctive coloration of the perpetrator's garments as worn at the time of the robbery, coupled with the observation of identical garments on the person of the appellant only moments later and in close proximity to the crime scene, under circumstances not inconsistent with "flight", thus presented the Family Court with a question of fact, i.e., the reliability of the identification evidence, to which it could properly assign such probative weight as it chose. It is often necessary to resort to the use of circumstantial evidence to establish the identity of a perpetrator who, while committing a crime, conceals his face by means of a hood or a mask. An identification need not be based upon the recognition of an accused's facial features, but may be based upon other peculiarities, such as general appearance, size, features, clothing, voice or the like (23 CJS, Criminal Law, § 920, p 648) In *People v Spinks* (37 AD2d 424), for example, where the perpetrator had worn a bandanna over his face and glasses covering his eyes, and where, as a consequence, the complainant had only been able to observe his hair, ears and forehead during the commission of the crime, the court, in affirming the conviction, said (pp 426-427): "While it is true that the complainant saw her masked attacker for only a few seconds, her testimony [regarding her in-court identification of the defendant] was not incredible as a matter of law. It was a matter for the jury to decide, based on the credibility of complainant's testimony. *(People* v. *Seppi,* 221 N. Y. 62, 68; *People* v. *Festa,* 9 A D 2d 556.)" Somewhat similarly, in *People v Peterson* (25 AD2d 437), evidence that on the day prior to the robbery one of the defendants had purchased a 12-gauge shotgun and an Italian rifle, identified as the types of weapons employed by the three masked robbers, was held to be competent evidence on the issue of identification. (See, also, *People v Lewis,* 240 Cal App 2d 546; *State v Fore,* 37 NM 143; *People v Knight,* 44 Cal App 2d 887, cert den 314 US 675; *People v Coley,* 61 Cal App 2d 810.) As the court observed, correctly in my opinion, in *People v Van De Wouwer* (91 Cal App 2d 633, 639), "The identity of a defendant may be

established by proof of any peculiarities of size, appearance, similarity of voice, features *or clothing*." (Emphasis added.) Turning to the second assignment of error, I cannot agree with Justice Gibbons that the unobjected to and gratuitous remark by Police Officer Toby (in the course of describing appellant's arrest) regarding the latter's decision to remain silent at the time of his apprehension, constituted reversible error under the facts of the instant case (cf. *People v Conyers,* 49 NY2d 174; *People v Von Werne,* 41 NY2d 584; *Jenkins v Anderson,* 447 US 231; *People v Savage,* 50 NY2d 673). The proceedings at bar were conducted before a Family Court Judge sitting without a jury, and in this regard it is particularly important to note that the matter of appellant's postdetention silence played no part whatsoever in the court's determination, and was neither mentioned nor alluded to in the trial court's findings of fact. Under these circumstances, I would hesitate to conclude that the interest of justice would be served by a reversal predicated on this ground alone, and further believe that the error, if any, has been conclusively demonstrated to have been harmless beyond a reasonable doubt (see *People v Crimmins,* 36 NY2d 230). Accordingly, I would affirm.