OPINION OF THE COURT
Simons, J.
 Defendant has been convicted of assault in the first degree (Penal Law § 120.10) and criminal use of a firearm in the second degree (Penal Law § 265.08) as the result of the barroom shooting of Gary Campbell. During the trial, the jury heard evidence of defendant’s silence shortly before his arrest, particularly his failure to respond to general inquiries made in his presence at the scene of the shooting by the investigating police officer. It was used both to impeach defendant’s testimony on cross-examination and as direct evidence of defendant’s depraved indifference in perpetrating the assault on the victim. We conclude that receipt of this evidence constituted error and requires a new trial.
On February 11, 1985 defendant, his girlfriend, Donna Barreiro, and her sister, Cynthia Cassano, were in Captain Steve’s Bar in Lynbrook, New York, when the victim entered the bar and attempted to join their conversation. Initially, the tone of the discussion was friendly but Campbell became increasingly obnoxious as he continued to drink. Eventually he and defendant got in a dispute and began shoving each other. As they struggled, defendant drew a .38 caliber handgun from a sjioulder holster. The gun discharged and the bullet struck Campbell in the neck, seriously injuring him.
Police Officer Carl Lisi was the first officer at the scene. When he arrived, defendant was sitting at the bar with Ms. Barreiro and Ms. Cassano, and Campbell was lying on the floor in a pool of blood. Officer Lisi made general inquiries of the patrons but was unable to learn what had happened. He *617 had Campbell removed to a hospital and then, with another officer who had arrived subsequently, continued the investigation. Upon questioning Ms. Cassano, he learned that in the excitement after the shooting Ms. Barreiro had secreted defendant’s gun and holster in her apartment next door. She helped Lisi recover the gun and, after he had done so, Detective John Ceprini took defendant into the dining room off the bar area, advised him of his Miranda rights and then asked him to explain what happened. Defendant told Ceprini that Campbell had become obnoxious while visiting with Ms. Barreiro and Ms. Cassano and that he had told him to stop. When Campbell failed to do so, the two men started pushing each other and during the struggle Campbell fell to the floor. Defendant acknowledged seeing blood on the floor underneath Campbell’s body but made no mention of the gun. Ceprini arrested defendant and took him to the police station where he executed a written statement. In this statement, he admitted that he used a gun to strike defendant on the head, that when he did so it accidentally discharged and that he then saw Campbell fall to the floor.
Defendant was charged with assault in the first degree for recklessly engaging in conduct “[u]nder circumstances evincing a depraved indifference to human life * * * which created] a grave risk of death to another person, and thereby cause[d] serious physical injury to another person” (Penal Law § 120.10 [3]). The People, in an attempt to impeach defendant’s claim that the shooting was an accident, and to help prove an essential element of the crime charged, “depraved indifference to human life”, introduced testimony that he remained silent and sat at the bar with a drink in front of him shortly after the incident. Thus, Officer Lisi testified that immediately after he entered the bar and noticed Campbell he asked the patrons and the bartender what had happened but that defendant did not respond to his general inquiry. Lisi testified further that after learning that Campbell was wounded by a bullet he asked the people in the bar, “Who had the gun?”, “Who shot him?” and that defendant did not respond to either of these general questions.
After the People rested, the defense called a waitress at Captain Steve’s. She testified that she witnessed the events of the shooting and, on cross-examination by the prosecutor, she was permitted to give evidence similar to Officer Lisi’s, testifying that defendant did not approach Officer Lisi or inform him of the shooting. The People were also permitted to ask defen *618 dant on cross-examination whether he had telephoned the police after the accident or requested someone to do so. All of this testimony was admitted over the objection of defense counsel and it was used by the prosecutor in summation to support his theory of the assault. This use of defendant’s prearrest silence to impeach him or as direct evidence of guilt violated our common-law rules of evidence. Accordingly, we need not address defendant’s contention that its admission violated article I, § 6 of the State Constitution and the Fifth Amendment of the United States Constitution.
Analysis starts with People v Conyers, a case considered by this court twice. In People v Conyers (49 NY2d 174 [Conyers I]), we held that silence at the time of arrest could not be used against a defendant for impeachment purposes because its use violated due process and improperly penalized defendant for the assertion of a basic constitutional right. While the People’s petition for a writ of certiorari was pending, the Supreme Court handed down Jenkins v Anderson (447 US 231, 239-241) in which it held that the use of a defendant’s prearrest silence for impeachment purposes does not offend guarantees contained in the United States Constitution. The court noted, however, that individual State courts remain free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial (id., at 240; see also, Fletcher v Weir, 455 US 603, 607). Shortly thereafter, the Supreme Court granted certiorari in Conyers I, vacated our order and remanded the case for further consideration in light of Jenkins (New York v Conyers, 449 US 809).
Upon reconsideration, we held that absent circumstances not there present, our State rules of evidence preclude the use of a defendant’s pretrial silence to impeach his trial testimony (People v Conyers, 52 NY2d 454, 457 [Conyers II]). This was so, we said, because a defendant’s silence in the face of police interrogation shortly after evidence of a crime is uncovered is usually ambiguous and its probative value minimal (People v Conyers, 52 NY2d 454, 458, supra; see also, People v Conyers, 49 NY2d 174, 181, supra; United States v Hale, 422 US 171, 176-177).
Silence in these circumstances is ambiguous because an innocent person may have many reasons for not speaking. Among those identified are a person’s "awareness that he is under no obligation to speak or to the natural caution that arises from his knowledge that anything he says might later *619 be used against him at trial” (Conyers II, at 458), a belief that efforts at exoneration would be futile under the circumstances (People v Dawson, 50 NY2d 311, 322) or because of explicit instructions not to speak from an attorney (see, People v Conrow, 200 NY 356, 367-369; Fisch, New York Evidence § 792 [2d ed 1977]). Moreover, there are individuals who mistrust law enforcement officials and refuse to speak to them not because they are guilty of some crime, but rather because "they are simply fearful of coming into contact with those whom they regard as antagonists” (People v Conyers, 52 NY2d 454, 458, supra). In most cases it is impossible to conclude that a failure to speak is more consistent with guilt than with innocence.
Moreover, despite its lack of probative value the evidence undoubtedly affects a witness’ credibility. Jurors, who may not be sensitive to the wide variety of alternative explanations for a defendant’s pretrial silence, may assign much more weight to it than is warranted and thus the evidence may create a substantial risk of prejudice (see, People v Conyers, 52 NY2d 454, 459, supra; see also, United States v Hale, 422 US 171, 180, supra).
To be distinguished are those limited cases in which evidence of silence has been admitted to impeach the credibility of a defendant who takes the stand because the circumstances justify the inference that the evidence is more consistent with guilt than innocence. For example, in People v Rothschild (35 NY2d 355, 358-359) a police officer charged with larceny claimed at trial that he had been engaged in a police undercover operation and had not actually been seeking to obtain money illegally. The People cross-examined him concerning his silence at the time of the arrest in an attempt to impeach his claim that he was involved in a police operation. Notwithstanding receipt of this evidence, we affirmed the conviction because under the circumstances, the evidence of silence had an unusually high probative value. The officer was under a duty to inform his superiors of his undercover activities and thus his continued silence in the face of direct accusations by his fellow officers was probative of guilt (id., at 360-361; see also, People v Bowen, 65 AD2d 364, affd 50 NY2d 915; see generally, Richardson, Evidence §§ 222, 502-A [10th ed 1972-1982 Cum Supp]).
The People contend that the Conyers decisions related to "postarrest” silence and are not controlling because the case *620 before us involves prearrest silence. Our language in Conyers II was not so limited, however; although defendant had been arrested and the court could have emphasized that fact, we spoke of defendant’s "pretrial silence” (People v Conyers, 52 NY2d 454, 457, 459, supra).
But even more to the point, the rationale of Conyers holding applies with equal force to the facts in this case. Indeed, the circumstances here create even stronger doubts about the probative value of defendant’s silence. For example, Officer Lisi’s questioning was not directed at any particular person at the scene and no direct statement or implied accusation was made to defendant that would naturally result in protest if untrue (see, People v Allen, 300 NY 222, 225, supra; People v Egan, 78 AD2d 34, 36). Significantly, other people at the bar with defendant did not reply to the police officer’s general inquiries either. Thus, any probative weight that might be gained from silence persisting in the face of a direct accusation was not present (see, United States v Hale, 422 US 171, 176, supra). In addition, defendant testified that following the incident he was "numb all over”, "scared” and "in a cold sweat”. The only conversation he remembered until Ceprini questioned him was the bartender asking him if he wanted a drink. In the absence of evidence establishing that defendant heard pr understood Officer Lisi’s questions, this testimony also reduced any probative value his silence might have had (see, People v Lourido, 70 NY2d 428, 434; see generally, Fisch, New York Evidence § 792 [2d ed]). Finally, defendant was not under any duty to speak as was defendant in People v Rothschild (35 NY2d 355, supra).
The People also attempted to use defendant’s prearrest silence as direct evidence of "depraved indifference to human life”. Due to constitutional protections, a defendant’s silence at or after his arrest cannot be used by the People as a part of their direct case (People v Conyers, 49 NY2d 174, 177, supra; People v Rothschild, 35 NY2d 355, 359, supra; People v Rutigliano, 261 NY 103, 106-107), but the People maintain that the prearrest silence may be so used. They rely on People v Kanelos (107 AD2d 764, 765) in which defendant driver, while intoxicated, shot his passenger and then abandoned him in the snow in a deserted area (see also, People v Gaudet, 115 AD2d 183; People v Lilly, 71 AD2d 393). The evidence in Kanelos involved conduct, and that decision and the other similar cases cited do not support the proposition that a defendant’s silence and failure to respond to general police *621 inquiries before arrest may be used in the prosecutor’s case-in-chief. Moreover, whether defendant’s actions constituted "depraved indifference to human life” is based on an objective assessment of the circumstances surrounding the shooting and not on the subjective intent of defendant (People v Register, 60 NY2d 270, 276-277). Defendant’s "remorse, grief * * * emotional condition”, or even his silence after the incident, has little relevance in proving he acted under circumstances "evincing a depraved indifference to human life” (see, People v Roe, 74 NY2d 20, 27 [decided today]).
Inasmuch as there must be a new trial, we have no need to consider the other errors defendant asserts.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.