THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
KENNETH GILMORE, JR., Appellant.

Second Department, August 18, 1980

APPEARANCES OF COUNSEL

*Martin B. Adelman* for appellant.

*Eugene Gold, District Attorney (Michael Gore* of counsel),
for respondent.

OPINION OF THE COURT

GIBBONS, J.

The question presented for resolution on this appeal per-
tains to the propriety of the prosecutor's questions on cross-
examination of the defendant and his comments on summa-

tion, concerning the defendant's silence both prior to his arrest, and at the time of his arrest in a foreign jurisdiction, where, on his direct examination he had testified that the homicide and the assault were committed by another person present in the automobile where the shooting took place.

I

In the early morning hours of June 6, 1976, Ted Gross was shot in the head and killed while sitting in the driver's seat of his Citroen automobile. A friend, Melita Sneed, who was seated in the front passenger seat, was also shot, but survived her injuries. Kenneth Gilmore, Jr., the defendant, was seated behind Gross and one George Murdock was seated in the position behind Ms. Sneed. Medical testimony indicated that the shots were fired from within the automobile.

From the evidence adduced at trial, it was clear that the perpetrator of the alleged crimes was either the defendant, Gilmore, or George Murdock. Shortly after the crime was committed, Gilmore and Murdock separated. Gilmore testified that after he left Murdock, he took his wife to a christening. In the course of their investigation, New York police officers came to Gilmore's sister's house looking for him. Gilmore's brother was there, and believing that he was the defendant, the police held a shotgun to his face. The defendant's sister later told him about the incident. Upon learning the circumstances of the police efforts to locate him, Gilmore contacted his uncle in South Carolina, who told him about a friend of his, named Sergeant Gathers, a local police officer, who would be "the best one" to surrender to.

Defendant went to South Carolina by bus. Once there, he surrendered to Sergeant Gathers, was then taken into custody, and was lodged in the local jail. Asked if he desired to fight extradition,* Gilmore declined to do so and said that he wanted to return to New York. He remained incarcerated in Charleston County until such time as a New York detective went down to South Carolina and took him back to New York.

During the trial, the District Attorney asked Gilmore if he had told any police officers in the bus station (from which he left for South Carolina) that he saw someone else kill Ted Gross. Then he asked if defendant told his uncle's friend, Sergeant Gathers, in South Carolina that he wanted to give

---

* South Carolina is not a member of the Interstate Extradition Compact.

himself up for shooting Ted Gross. There was no objection to either question. To both questions, defendant replied in the negative. During summation, the prosecutor urged the jury to consider the evidence of Gilmore's flight to South Carolina after the killing, noting that while defendant testified that he surrendered in South Carolina, he never told anybody that Murdock did the shooting.

## II

The court is faced with two incidents where the prosecutor made use of the defendant's prior silence to impeach his credibility, both while Gilmore was on the stand, and again during summation. Defendant claims that these questions and comments by the Assistant District Attorney require reversal. While we disagree with defendant's claim of impropriety in questioning him regarding his silence in the bus terminal, we do agree that the questions and comment with regard to his silence *while in the custody* of Sergeant Gathers were improper and prejudicial, even though no objections were raised at the trial.

## III

It has long been the law in this State that a defendant's silence cannot be used by the People as a part of their direct case *(People v Rutigliano,* 261 NY 103). Only recently, however, has case law come to grips with the question of whether a prosecutor may properly use a defendant's silence against him for purposes of impeachment during cross-examination. The cases decided thus far make distinctions as to the legal effect depending on the time when a defendant chooses to remain silent. The differing legal consequences flowing from such silence require a consideration of three distinct intervals: (1) the prearrest period, meaning that period of time after a crime has been committed but before the police have made any affirmative contact with the defendant; (2) the postarrest period, referring to that time after *Miranda* warnings have been given (see *Miranda v Arizona,* 384 US 436); and (3) the "time of arrest", which refers to the amorphous block of time after affirmative contact has been made between police and suspect, but prior to the communication of constitutional rights.

In *Doyle v Ohio* (426 US 610), the Supreme Court of the

United States held that where a defendant, while in custody, had been provided with the warnings mandated by *Miranda* and was thereby impliedly promised that his silence would not be used against him, it would be fundamentally unfair to then allow that silence to, in fact, be used to his detriment even for the limited purpose of impeachment. Thus, impeachment may not be accomplished by reference to such postarrest silence.

Carrying forward the reasoning from *Doyle (supra),* the Court of Appeals has recently held in *People v Conyers* (49 NY2d 174) that, although no *Miranda* admonitions are administered, the use of an accused's silence at the time of arrest is likewise violative of due process. The court stated (pp 179-180): "The implied promise made to a suspect when he is given *Miranda* warnings merely repeats and reiterates the promise already made by both our Constitutions. Although it is necessary to repeat that promise in order to ensure that the suspect fully understands his constitutional rights, the failure of the police to do so does not serve to prevent a suspect from relying upon that promise. Moreover, it is a matter of common knowledge that a person who is arrested is not required to speak to the police, and that his silence may not be used against him. This is not an arcane legal principle known only to the learned, but rather is familiar to most citizens. For purposes of a due process analysis based on the unfairness of capitalizing upon the accused's accurate appreciation and exercise of his basic constitutional rights, we deem it irrelevant whether that knowledge was imparted by the police, as required by law, or was absorbed from our common culture (see, also, *Douglas v Cupp,* 578 F2d 266, cert den 439 US 1081). In short, we conclude that the use for impeachment purposes of an accused's silence *at the time of his arrest* is violative of due process." (Emphasis added.)

In the area of prearrest silence, however, a different rationale has been applied. While expressly stating that the individual States are free to disallow the use of prearrest silence for impeachment purposes, the Supreme Court, in *Jenkins v Anderson* (447 US 231), found that as a matter of Federal constitutional law, the use of prearrest silence for impeachment violates neither the Fifth nor Fourteenth Amendment guarantees. The court distinguished *Doyle (supra),* noting that in the prearrest situation, no governmental action has induced the defendant to remain silent, since no implied promises have yet been made.

We note that the Court of Appeals' recent decision in *People v Savage* (50 NY2d 673), a case dealing with the propriety of a prosecutor's questions and comments regarding a defendant's postarrest silence, is distinguishable from *Doyle (supra)*, *Conyers (supra)*, and from the case at bar. In *Savage (supra)*, the prosecutor was permitted, on defendant's cross-examination, to bring out for impeachment purposes the fact that the defendant, who had previously waived his right to silence and had given a statement to the police, omitted a clearly exculpatory detail when first confronted by the police, but which he included when called on his own behalf to testify at trial. In the instant case, however, defendant did not waive any rights by making voluntary statements to the police. Here, instead, while in the custody of Sergeant Gathers and in the custody of the New York police, he avoided talking about the incident completely; hence, the behavioral expectations referred to in *Savage (supra)*, which make it most unnatural to omit certain information from a statement, are not present.

## IV

Turning to the facts before us today, the court must deal with the defendant's silence on two occasions—once in the bus terminal, and once in the custody of Sergeant Gathers in South Carolina. Clearly, the incident in the bus terminal falls into the *prearrest* category. By New York and Federal constitutional standards, therefore, there was nothing improper about the prosecutor's cross-examination regarding Gilmore's silence at that point. There is a question, however, as to defendant's status during his sojourn to South Carolina, as the People have argued that since Sergeant Gathers was a family friend, defendant was not in custody nor under arrest. It appears from the record that *Miranda* warnings were not given to the defendant by the South Carolina authorities; therefore, the question before us is whether this period in a foreign jurisdiction constituted the "time of arrest", therefore, governed by *Conyers* (49 NY2d 174, *supra*), or "prearrest", and under the *Jenkins* rationale *(supra)*. On the facts before us it appears that Gilmore was, in fact, in custody in South Carolina, having surrendered himself to Sergeant Gathers and being held in detention in jail until he was removed by the New York police. Hence, the "time of arrest" reasoning must be applied.

"Arrest" has been defined as "the taking, seizing, or detain-

ing of the person of another, (1) by touching or putting hands on him; (2) or by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested" (5 Am Jur 2d, Arrest, § 1, p 695). Therefore, although a general statute authorizing arrests for crime applies only to crimes committed within the State, "[w]here a party has unlawfully been arrested by an officer without his jurisdiction, he waives his objection to the illegality of the arrest by failing to object and voluntarily accompanying the officer or by giving bail" (6A CJS, Arrest, § 53, subd a, pp 124-125; see, also, *Gold v Bissell,* 1 Wend 210; *Commonwealth v Neubauer,* 142 Pa Super Ct 528; *Matter of Popejoy,* 26 Col 32).

In this case, Gilmore, upon the advice of his uncle, voluntarily surrendered himself to Sergeant Gathers. When asked if he wished to waive extradition, he replied affirmatively. Moreover, testimony of the New York police detective who went to South Carolina to retrieve Gilmore indicated that the defendant was in custody and, in fact, in jail.

## V

The Supreme Court stated in *Jenkins* (447 US 231, 48 USLW 4693, 4696, *supra)* that after *Miranda* warnings are given, " 'it does not comport with due process to permit the prosecution during the trial to call attention to [the defendant's] silence *at the time of arrest'* ". (Emphasis added.) And, *Conyers (supra)* holds that even though no *Miranda* warnings are given, there is a constitutionally implied promise that an accused may remain silent, recognizing that *Miranda* warnings merely reiterate the promises already made by both the Federal and State Constitutions.

As the right to silence is a fundamental right, any attempt to penalize a person for the exercise of such right must be scrutinized with extreme care *(People v Conyers, supra,* p 180). It was plainly error for the prosecutor, during cross-examination of the defendant, to ask him questions about, and during summation to make reference to, Gilmore's silence during his interlude in South Carolina. Although no objection was taken by defendant's counsel to the prosecutor's inappropriate questions and comments, the error herein was of constitutional magnitude and clearly prejudicial.

In conclusion, we hold that the prosecutor's question with

regard to the defendant's prearrest silence was an appropriate form of cross-examination. However, inasmuch as the right to silence at the time of arrest does involve a fundamental right, under the facts and circumstances of this case, the judgment should be reversed in the interest of justice and a new trial ordered.

HOPKINS, J. P., LAZER and RABIN, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered December 21, 1977, reversed, as a matter of discretion in the interest of justice, and new trial ordered.

Appeal, taken by permission, from an order of the same court, entered November 6, 1978, dismissed as academic in light of the determination on the appeal from the judgment.