■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES L. DUNWOODY, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Beldock, J.), rendered January 4, 1980, convicting him of manslaughter in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress two statements. Judgment affirmed. On March 3, 1979, the defendant, an Army private almost 22 years old, voluntarily surrendered to the military authorities at the office of the Military Police at Fort Hamilton, New York, at which time he informed them that he was wanted for questioning by the New York City police in connection with a homicide. Defendant was taken into custody by two New York detectives and removed to the police station of the 13th Homicide Zone in Brooklyn, where he was met by Detective Ruddy Braches. The detective informed defendant that he had information that defendant had killed Carlos Vasquez and that he was under arrest for that crime. Braches then told the defendant that he was going

to advise him of certain rights before interrogating him and proceeded to read the *Miranda* warnings from a card. At the suppression hearing, the detective testified that, after reading each of the several *Miranda* warnings to the defendant, he asked him if he understood them and that the defendant responded in the affirmative. The interrogation which followed resulted in an inculpatory statement by the defendant. On appeal, defendant claims that the trial court erred in refusing to suppress this statement because he did not voluntarily and knowingly waive his constitutional right to remain silent or his right to counsel prior to custodial interrogation. From this record it appears that the defendant, while still at the Fort Hamilton Army base, was advised by a Captain Manicucci, the military legal officer present, before he was taken into custody, that he could not represent him as counsel in this matter involving civil law, but that the defendant should not make any statements before consulting with an attorney. It also appears that, upon initial questioning, defendant denied fighting with the deceased. He then asked if he could "see" his wife who was present in the station house at the time of questioning. She was brought into the room and sat with the defendant during the interrogation. After the defendant was given the *Miranda* warnings, he made two telephone calls. He, at no time, requested or made known to Detective Braches his wish to consult with an attorney. The absence of an express waiver by the defendant of his right to counsel and his right to remain silent prior to custodial interrogation is not necessarily conclusive, and such waiver may be established by implication from "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver" (see *North Carolina v Butler,* 441 US 369, 373; cf. *People v Schroder,* 71 AD2d 907). A determination as to such inferred waiver may be made from an examination of the totality of the surrounding circumstances (*Fare v Michael C.,* 442 US 707; *People v Baez,* 79 AD2d 608; *People v Rooney,* 82 AD2d 840). Applying these principles to the instant matter, we are impelled to conclude that defendant's acknowledged understanding of the purport of the *Miranda* warnings, coupled with the facts (1) that, when he surrendered to the military authorities, he stated that he was wanted by the police for questioning in relation to a homicide, (2) that the military legal officer warned him not to make any statements before consulting with an attorney, (3) that he requested and was afforded the presence of his wife during the interrogation by Detective Braches, and (4) that he made two telephone calls from the station house and never requested nor sought an attorney, disclosed a comprehension of his rights and a total willingness to permit the inquiry without counsel present. With respect to defendant's challenge to his subsequent statement, made on March 3, 1979 at the station house of the 13th Homicide Zone, to Assistant District Attorney Grillo, the record reveals that, after giving the defendant the *Miranda* warnings and asking him whether he understood them, defendant responded that he did. The Assistant District Attorney then asked: "Now that I have given you your rights and you have indicated to me that you have understood [them], do you now want to speak to me about what happened?" Defendant again replied in the affirmative, and the ensuing interrogation of the defendant was stenographically recorded. There is no merit to defendant's claim that, under the circumstances herein, an express waiver was lacking for the reason that, when the Assistant District Attorney asked if he were willing to talk about the matter, the question should have contained the reference that such conversation would be without an attorney present. Defendant's affirmative response to the above-noted question constituted a sufficient, expressly stated waiver of his constitutional rights. His response must be evaluated in the light of the context of the question, which called for an acknowledgment of

his understanding of his constitutional rights, which were the subject matter of the *Miranda* warnings given to him, and having such understanding, to willingly submit to such interrogation. We have considered defendant's other contentions and find them to be without merit. Mollen, P. J., Damiani, Gibbons and Thompson, JJ., concur.