■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERNESTO GRIFFITH, Appellant. — Appeal from a judgment of the Supreme Court at Trial Term (Smyk, J.), rendered May 12, 1981 in Chemung County, convicting defendant upon his plea of guilty of the crime of manslaughter in the first degree. Defendant was indicted for the crime of murder in the second degree for stabbing a fellow inmate at the Elmira Correctional Facility. The stabbing occurred on August 13, 1980 at about 10:30 A.M. Immediately taken to the Arnot Ogden Hospital for treatment, the victim was later returned to the correctional facility hospital. As the result of the stab wounds, the victim, whose name was Rodriguez, died early in the morning of August 15. While he lived, Rodriguez was first questioned by the officer who transported him to Arnot Ogden. Although he related some of the details of the attack, he refused

to name his assailant. However, before the victim returned to the facility hospital he is said to have called the escorting officer over to him and said "77B970 — he locks in 1433". The officer wrote this information on a piece of paper and the victim allegedly confirmed it orally but offered no explanation of its meaning. After the information was relayed to the facility's Deputy Superintendent, it was found to be the inmate number and cell number of defendant. At about 2:15 P.M. on August 14, 1980, the Deputy Superintendent requested two correction officers employed by the facility to talk to the victim. When asked "who stuck him", the victim said "Don't you have him?", and when one of the officers said they wanted to make certain they had the right person, the victim said "77B917". In response to further questioning the victim said the person who stabbed him was a friend who wanted him to recover a pair of Puma sneakers that someone had stolen from the assailant. When the number that was given was checked, it was found that there was no inmate with that number at the facility. An officer returned to the victim and asked him if the last two numbers could be 70 instead of 17, and the victim nodded "yes". Shortly after the victim died the Deputy Superintendent sent orders to search defendant's cell. At the time, defendant had been transferred to special housing. His cell was searched and although the sneakers were not found, all of the movable property in defendant's cell was bagged and later, at the request of the State Police, was taken to the Deputy Superintendent's office. Among the property taken was clothing stained with blood, the type of which matched the victim's. Defendant's motion to suppress the evidence seized was denied. We agree with that determination. Applying the "reasonable expectation of privacy" standard of *Katz v United States* (389 US 347) and conceding if only for argument purposes that prisoners retain some residuum of Fourth Amendment protection in cell search situations, albeit in a reduced measure from nonincarcerated individuals (*United States v Chamorro*, 687 F2d 1, 4, cert den __ US __, 103 S Ct 462), it does not follow, as defendant contends, that the issuance of a warrant upon a finding of probable cause was an absolute requirement for the search and seizure conducted here. A search warrant has never been necessary to search a prisoner's cell (*United States v Chamorro, supra*). Although this search was not conducted for justifiable institutional reasons such as prison security, and even though it was done at the request of the State Police and not the facility's personnel, and even though there were no exigent circumstances existing since the cell had been secured, nevertheless, in the circumstances outlined above, it cannot be described as an unreasonable search, which is all that is prohibited by the Fourth Amendment (see *United State v Chamorro, supra*). The correction officers had established the identity of defendant as the assailant from the victim before his death, the fact of the friendship between them, and the reason for the altercation. Adding these factors to the prison setting, we find the search to have been reasonable and sustain the determination of the suppression court. Defendant's next contention is that the suppression court erred in denying his motion to suppress his oral statements. He bases this contention on his claim that his right to remain silent was not "scrupulously honored", as required by *Michigan v Mosley* (423 US 96, 103-104). Defendant was first interviewed by Investigator Lewis of the State Police at a chaplain's office on August 13, 1980, the morning of the stabbing. When the officer identified himself and informed defendant of his *Miranda* rights, defendant remained silent and refused to look at Lewis or to acknowledge Lewis' presence in the room. For the next 20 minutes, Lewis attempted to converse with defendant, without success. On August 15, 1980, Lewis again met with defendant, again informed him of his rights and again received the same lack of response and co-operation. Correction Officer Devlin,

who was in the interrogation room while Lewis was questioning defendant, told defendant to tell Lewis if he wanted an attorney. Defendant replied "I know I don't have to talk to this man", thus evidencing a full realization of his right to remain silent. Lewis then left the room and Devlin questioned defendant for the next five hours, during which time defendant made certain statements. At about 4:10 P.M. Investigator Driscoll of the BCI arrived and told defendant that the victim had died. Defendant made other incriminating statements. Having shown that he fully realized that he had the right to remain silent, and having failed to inform the interrogating officers that he intended to exercise that right after being fully informed of all of his *Miranda* rights, defendant can hardly claim that his silence indicated that he was exercising that right. Thereafter, when defendant made his statements, he impliedly waived his right. The final claim of defendant, i.e., that the photo identification of defendant by the inmate Lyons should have been suppressed, has no merit. Lyons knew both defendant and victim before the incident and properly could identify them without regard to the photograph. The relevancy of Lyons' identification to defendant's guilt was not an issue at the suppression hearing. Accordingly, the conviction should be affirmed. Judgment affirmed. Sweeney, J. P., Main, Casey, Yesawich, Jr., and Weiss, JJ., concur.