■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL W. HULTS, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Delin, J., at sentencing; Collins, J., at trial), rendered February 5, 1985, convicting him of sodomy in the first degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered.

On March 27, 1982, at about 5:00 P.M., the victim, a 17-year-old high school student, was walking quickly on Plainfield Avenue towards Jericho Turnpike in Nassau County, to catch a bus to the shopping center in Roosevelt Field. A man, later identified as the defendant, pulled his white car with a black top over to the curb and offered the victim a lift which she accepted. Rather than dropping her off at a bus stop as she requested, the man proceeded to Roosevelt Field, and stopped his vehicle in an empty area of the parking lot. He then

pulled out a knife, threatened the victim, and forced her to perform an act of sodomy. After she was released from the vehicle, the victim, between 5:30 and 5:45 P.M., approached an employee at the Century Roosevelt Field Theater, told him about the incident, and eventually telephoned her family.

On June 30, 1982, a police officer observed the defendant in a parking lot walking towards a four-door white Ford Torino with a black top. The officer was aware that a sodomy complaint had been made by the victim and he carried a composite sketch of the perpetrator. At the officer's request, the defendant agreed to voluntarily go to the station house to be photographed after being told that he might be a suspect in the case. After a photographic viewing during which the victim selected the defendant's photograph as that of her assailant, the defendant was arrested, and was further identified by the victim in a police lineup. The victim also later positively identified the defendant's voice as that of her assailant.

At trial, the defendant challenged the prosecution's identification evidence and took the stand, presenting an alibi defense which was supported by the testimony of other witnesses. On this appeal, he challenges his conviction on numerous grounds, including a claim that the evidence adduced gave rise to a reasonable doubt as to the complainant's identification of him as her assailant. We disagree. Viewing the evidence in the light most favorable to the People, we find that there is sufficient evidence in the record for any rational trier of fact to conclude that the defendant is guilty as charged of committing the crime of sodomy in the first degree *(see, People v Contes,* 60 NY2d 620). Contrary to the defendant's assertions, the discrepancies in the witnesses' testimony are insufficient to warrant a conclusion that the prosecution's identification evidence was incredible as a matter of law *(see, People v Di Girolamo,* 108 AD2d 755; *People v Reyes,* 118 AD2d 666).

However, we agree with the defendant's further contention that the prosecutor violated his privilege against self-incrimination by improperly referring to the defendant's postarrest silence during his opening statement and summation, and eliciting testimony on this matter on the People's direct case. Specifically, in his opening statement the prosecutor improperly pointed out that after his arrest, the defendant answered all the police's questions, but repeatedly remained silent when asked "about the girl" or "what happened with the girl". Later, during his direct examination of a police officer, the prosecutor again improperly elicited testimony concerning the

defendant's selective postarrest silence. Despite the fact that the defense counsel later objected to this line of questioning during the redirect examination of the police officer, and thereafter even moved for a mistrial, the prosecutor persisted by eliciting additional testimony on this point during his direct examination of a detective. To further compound the problem, the prosecutor, in his summation, emphasized the fact that the defendant exercised his right to remain silent only when the police questioned him about the victim or the incident.

As we stated in the case of *People v Gilmore* (76 AD2d 548, 553): "As the right to silence is a fundamental right, any attempt to penalize a person for the exercise of such right must be scrutinized with extreme care *(People v Conyers* [49 NY2d 174,] 180)". Similar to our finding in *Gilmore,* it was plainly error for the prosecutor in this case to make reference to and elicit testimony concerning the defendant's postarrest silence. Although the defense counsel did not initially raise an objection to the prosecutor's inappropriate comments and questions, he did so as the trial progressed and in the face of the prosecutor's persistence in pursuing this approach in presenting the People's case. In any event, as the error herein was of constitutional magnitude and clearly prejudicial, the prosecutor's repeated reference to the defendant's silence cannot be said to be harmless beyond a reasonable doubt *(see, People v Crimmins,* 36 NY2d 230), or be overlooked on the ground that the issue was not properly preserved for review *(People v Gilmore, supra).*

We further note that it is well settled that absent unusual circumstances, an individual's postarrest silence may not be used as evidence of guilt in the prosecution's direct case or for impeachment purposes *(see, People v Conyers,* 49 NY2d 174; *cf. People v Savage,* 50 NY2d 673, *cert denied* 449 US 1016). The fact that the defendant, after he was arrested and *Miranda* warnings were given, spoke to the police concerning matters other than the victim or the incident, did not constitute a waiver of his right against self-incrimination. Also, contrary to the People's assertion, the fact that they were required to prove the voluntariness of the defendant's statements to the police beyond a reasonable doubt did not provide the type of unique circumstances which would justify the prosecutor's inappropriate questions and comments.

As a new trial must be held, we need not address the defendant's remaining contentions on this appeal. We note however, that the People properly maintain that the results of

the police's use of hypnosis upon the victim to learn further details of the crime was unreliable and could not, under the circumstances of this case, be used by the defense to impeach the victim's testimony (see, People v Hughes, 59 NY2d 523). Gibbons, J. P., Bracken, Niehoff and Kunzeman, JJ., concur.