THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN "JOHNNY" NUNEZ, Appellant.

Third Department, February 13, 1992

APPEARANCES OF COUNSEL

*David Seth Michaels* for appellant.

*Paul Czajka, District Attorney (Marlene O. Tuczinski* of counsel), for respondent.

**OPINION OF THE COURT**

LEVINE, J.

This appeal arises from the denial of a motion by defendant to suppress certain statements made by him following his arrest. The relevant facts, as established at the suppression hearing, are as follows. On the evening of March 3, 1989, members of the Capital District Drug Task Force placed under surveillance the Amtrak Train Station in the City of Hudson, Columbia County, for the purpose of intercepting a cocaine shipment expected to arrive at that location and arresting defendant pursuant to a superior court warrant out of Schenectady County on a cocaine possession charge. Following defendant's arrival at the station and subsequent arrest, he was transported to the Hudson Police Department where he was advised of his *Miranda* rights by Investigator David Penny. Also present at that time was Officer William Ward. At the conclusion of the warnings, defendant was asked whether he understood each of his rights and he nodded his head affirmatively. Defendant was then asked by Penny whether he wished to "talk to us now", to which defendant did not respond. Instead, defendant put his head down and exhaled. At that point, Penny took pedigree information from defendant but engaged in no further conversation with defendant.

Approximately 2½ hours later, after being brought to the Albany office of the Task Force and while he was being fingerprinted by Ward, defendant asked Ward "how [they knew] that he was going to be in Hudson that evening". Before Ward could reply, defendant stated, "I think I know that answer." Ward then asked defendant "[h]ow much a person could make bringing up a half a kilo of cocaine to Hudson", and defendant replied that "[he] would have received $5,000". Ward further asked how much "Alex", an individual also arrested that evening, received and defendant told him "[f]ive hundred". Finally, Ward inquired as to why there was such a difference, to which defendant responded, "Alex was just a courier. You have to be able to crawl before you can walk."

Defendant was subsequently indicted by a Columbia County Grand Jury on a cocaine possession charge. Following the denial of his motion to suppress the above-described statements, defendant entered a plea of guilty to criminal possession of a controlled substance in the second degree. This appeal ensued.

Defendant's sole contention on this appeal is that County Court erred in refusing to suppress the statements made by him to Ward because there was no valid waiver of his *Miranda* rights. This claim is unavailing. While defendant correctly argues that no waiver may be presumed from a defendant's silence alone *(see, Miranda v Arizona,* 384 US 436, 475), a waiver may be established by implication from the defendant's "silence, coupled with an understanding of his rights and a course of conduct indicating waiver" *(North Carolina v Butler,* 441 US 369, 373; *see, People v Sirno,* 76 NY2d 967, 968; *People v Warden,* 170 AD2d 469, 470, *lv denied* 77 NY2d 968; *People v Bretts,* 111 AD2d 864, 865). Here, it is undisputed that defendant indicated that he understood his rights, that he made no request for an attorney, and that he put his head down and remained silent when Penny asked him whether he wanted to speak with them. Defendant then, within 2½ hours of being advised of his rights, spontaneously and voluntarily initiated a conversation with Ward regarding his involvement in the suspected crime.

The record supports County Court's finding that this dialogue was not the result of any police conduct which reasonably should have been anticipated to evoke a declaration from defendant *(see, People v Lynes,* 49 NY2d 286, 295; *People v Bretts, supra).* Having examined the totality of the circumstances *(see, Fare v Michael C.,* 442 US 707, 725; *People v Dunwoody,* 89 AD2d 569, 570), it is our view that defendant, by his silence together with his acknowledgment that he understood his rights and his subsequent conduct in initiating conversation with Ward, implicitly waived his *Miranda* rights *(see, People v Warden,* 170 AD2d 469, 470, *supra; People v Bretts, supra; see also, People v Griffith,* 94 AD2d 850, 852). Thus, although the statements made by defendant after his initial inquiry to Ward were the result of direct questioning, they were nevertheless properly found to be admissible because they were made pursuant to a valid waiver *(see, People v Bretts, supra).* County Court's denial of defendant's suppression motion should therefore be affirmed.

CASEY, J. (dissenting). The undisputed evidence establishes, in my view, that defendant's statements were the product of police interrogation or its functional equivalent and that they were not preceded by defendant's knowing and voluntary waiver of his right to remain silent or his right to counsel. The statements should, therefore, be suppressed and, accordingly, I respectfully dissent.

There is no evidence in the record to support the majority's conclusion that the "dialogue" between defendant and Officer William Ward was not the result of any police conduct which reasonably should have been anticipated to evoke a declaration from defendant. Assuming that Ward was merely curious about the going rate for couriers bringing drugs into the City of Hudson or that his questions were prompted by some other innocent purpose, the subjective intent of the police is irrelevant for the test is whether, in light of their knowledge concerning the suspect, the police should have known that their words or actions were reasonably likely to elicit an incriminating response *(People v Ferro,* 63 NY2d 316, 322-323, *cert denied* 472 US 1007). The exchange between defendant and Ward was not a mere dialogue or conversation; defendant asked a question which he answered himself before Ward could respond. Defendant volunteered no additional information and asked no other questions. Instead of responding to defendant's question, Ward embarked upon a line of questioning on a topic clearly outside the scope of defendant's inquiry, questions which obviously sought a response *(compare, People v Ackerman,* 162 AD2d 793, 794, *with People v Brown,* 161 AD2d 778, *lv denied* 76 NY2d 891). Inasmuch as the police suspected defendant's involvement in drug trafficking, Ward clearly knew or should have known that his questions were reasonably likely to elicit an incriminating response *(see, People v Ferro, supra; People v Ackerman, supra).* That defendant's initial question, which he answered himself, was spontaneous does not convert the statements in the ensuing "dialogue", which were the product of police questioning, into spontaneous statements *(see, People v Rodriguez,* 167 AD2d 562, 563; *People v Bretts,* 111 AD2d 864, 865).

If defendant had invoked his right to remain silent after he received the *Miranda* warnings at the Hudson police station, the subsequent questioning in Albany would had to have been preceded by a fresh set of *Miranda* warnings *(see, People v Ferro, supra,* at 322), which were not given. In denying defendant's suppression motion, County Court concluded that no inference of an invocation of the right to remain silent could be drawn from defendant's nonverbal response to the police inquiry as to whether he wished to talk to them. The police, however, apparently had little difficulty in understanding the meaning of defendant's response, for they refrained from any interrogation concerning the criminal investigation and limited their inquiry to background information: name, date of

birth, address and telephone number *(cf., People v Griffith,* 94 AD2d 850 [where the police viewed defendant's response as equivocal and continued to question him about the crime]). After obtaining this information, the police had no further conversation with defendant in Hudson, and he was transported to the Capital District Drug Task Force office in Albany.

Assuming that defendant did not invoke his right to remain silent in the Hudson police station after indicating that he understood his rights, it is my view that the People failed to meet their burden of showing the implicit waiver of defendant's rights permitted by *North Carolina v Butler* (441 US 369). Neither the silence of the accused after warnings are given nor the fact that a confession was eventually obtained will give rise to an implicit or presumed waiver *(Miranda v Arizona,* 384 US 436, 475). The courts of this State, however, have permitted a waiver to be found when "a defendant clearly understands his *Miranda* rights and promptly after having been administered those rights willingly proceeds to make a statement or answer questions during interrogation" *(People v Sirno,* 76 NY2d 967, 968; *see, e.g., People v Davis,* 55 NY2d 731; *People v Warden,* 170 AD2d 469, *lv denied* 77 NY2d 968; *People v Rivera,* 135 AD2d 755, *lv denied* 71 NY2d 901; *People v Gomez,* 127 AD2d 606, *lv denied* 70 NY2d 646). It is on this basis that the statements elicited by police questioning, after the defendant's initial spontaneous statement, were ruled admissible in *People v Rodriguez (supra)* and *People v Bretts (supra).*

The circumstances of this case do not fall within the rule articulated in *People v Sirno (supra).* Although defendant indicated an understanding of the *Miranda* warnings when they were administered, he did not waive those rights or respond to the police invitation to talk to them other than to provide his name, date of birth, address and telephone number, which did not constitute a waiver of his rights *(see, People v Hults,* 122 AD2d 857, 859). Nor did he willingly proceed to make a statement or answer questions *promptly* after the *Miranda* warnings were administered. Instead, in apparent recognition of defendant's unwillingness to talk to them about the criminal charge, the police refrained from asking him any questions relevant to the charge and transported him from Hudson to Albany where, some 2 to 2½ hours later, defendant made statements in response to Ward's questioning. This type of significant break in the custodial chain of events is clearly

relevant to the issue of a defendant's knowing and voluntary waiver of his rights *(compare, People v Suressi,* 170 AD2d 1004, 1005, *lv denied* 77 NY2d 967, *with People v Cicciarelli,* 145 AD2d 938, *lv denied* 73 NY2d 975; *see, Michigan v Mosley,* 423 US 96, 106-107). Defendant's failure to respond to the police invitation to talk with them promptly after the *Miranda* warnings were given, coupled with the lapse of a significant period of time and the significant change in custodial environment, effectively broke the natural flow of events which gives rise to an inference of a knowing and voluntary waiver when a defendant makes a statement or answers questions *promptly* after being given the *Miranda* warnings. In the absence of a fresh set of *Miranda* warnings or some other evidence that defendant remained aware of his right to remain silent and right to counsel and willingly waived those rights when he responded to Ward's questions, defendant's statements in response to those questions should be suppressed *(see, People v Breland,* 145 AD2d 639, 640-641, *lv denied* 73 NY2d 1011; *People v Nocella,* 129 AD2d 653, *lv denied* 70 NY2d 715).

To be contrasted are cases such as *People v Johnson* (49 AD2d 663, 665, *affd* 40 NY2d 882), where this court said that "[i]t is not necessary to repeat *Miranda* warnings immediately prior to the actual questioning" *(see also, People v Harper,* 165 AD2d 897, *lv denied* 77 NY2d 906; *People v Glinsman,* 107 AD2d 710, *lv denied* 64 NY2d 889, *cert denied* 472 US 1021). In the *Johnson* case, the defendant had been given the *Miranda* warnings on three separate occasions prior to the questioning which led to his confession, and each time the defendant had voluntarily and intelligently waived his rights by signing a form. In the case at bar, however, the *Miranda* warnings were administered to defendant once in Hudson and, although he nodded his head when asked if he understood his rights, he neither expressly nor implicitly waived them at that time. Accordingly, in the absence of a fresh set of *Miranda* warnings, it is my view that there must be some other evidence that defendant was aware of and voluntarily waived his rights when he responded to Ward's questions in Albany.

County Court and the majority of this court emphasized that defendant "initiated" the conversation with Ward in Albany, but that is only one possible interpretation of defendant's conduct. Defendant's question could have been purely rhetorical, seeking no response from Ward, an interpretation rendered even more plausible by the fact that defendant

answered the question himself before Ward could respond. More important, there was nothing in the question itself or defendant's conduct which revealed that defendant remained aware of the rights which were read to him several hours earlier at the police station in Hudson or that he was willing to waive his rights and respond to a line of questions outside the scope of his own inquiry, questions which clearly sought incriminating responses. Nor has there been any finding that defendant was a veteran of the criminal justice system and, as a result, was aware of his rights (cf., People v Giano, 143 AD2d 1040, 1041-1042, lv denied 74 NY2d 809, 896). The totality of the circumstances in this case reveals that defendant's course of conduct following the administration of the Miranda warnings in the Hudson police station until he began to respond to Ward's questions in Albany was equivocal at best and, therefore, the People failed to meet their burden of showing "a course of conduct indicating waiver", as required by North Carolina v Butler (supra, at 373). The judgment of conviction should therefore be reversed, the statements made by defendant after his initial inquiry to Ward should be suppressed, and the matter should be remitted to County Court for further proceedings.

WEISS, P. J., and MERCURE, J., concur with LEVINE, J.; CASEY, J., dissents in a separate opinion.

Ordered that the judgment is affirmed.